GARDEN, JUDGE:
James Walter Stevens and Timothy Stevens were the owners of certain real estate situate on Jenny’s Creek in Mingo *181 County, West Virginia. When the claim was filed, they were under the age of eighteen years, and consequently the claim was filed in their mother’s name as guardian. Their property was located on a hillside above Jenny’s Creek. On the property was a frame house consisting of five rooms and a bath. Farther up the hill and behind the house was an unimproved, narrow, two-lane road which was owned and maintained by the respondent. On the uphill side of this road was a ditch line designed for the purpose of diverting the surface water coming from the hillside above and thus preventing the same from washing away the road.
Mrs. Stevens testified that through the years the respondent had failed to devote any maintenance to this ditch line; that as a result, the same had become clogged with debris; and that surface water, instead of being carried off, would wash down the road and onto her wards’ property. Mrs. Stevens further indicated that as early as 1969 she noticed that the surface water was also carrying away portions of the road and depositing the same on the property behind the residence where she and her two sons lived. The condition of the hillside continued to worsen, and in 1971, Mrs. Stevens went to respondent’s local maintenance garage and requested assistance. On one visit she conferred with one Lester Messer and on another visit with Tom Marcum, the county maintenance supervisor. Mrs. Stevens also testified that she registered complaints with the Governor’s Office by phone on at least fourteen or fifteen occasions.
As a result of these complaints, Mrs. Stevens testified that respondent would dump large quantities of sand, gravel, and rubbish in the washed-out areas of the road, but that this newly deposited material would only be washed down on her wards’ property during the next rainfall and increase the amount of unstable earth above the residence. Mrs. Stevens testified that never during these filling operations by respondents was any attempt made to drag the ditch line in order to eliminate its clogged condition. Finally, during the early morning hours of February 18, 1972, a landslide occurred which, with the exception of one room which was damaged, completely destroyed the residence as well as seven apple trees located *182 on the property. After this occurred, Mrs. Stevens stated that with the aid of a bulldozer, the partially damaged one room was moved to an adjoining piece of property where it was attached to an existing one-room structure where she and her two children resided until February, 1973, when another slide occurred destroying this structure. This claim, however, is limited to the damages resulting from the 1972 slide.
Tom Marcum, who was at that time the respondent’s county maintenance supervisor, testified on behalf of the claimant and confirmed that he received a visit from Mrs. Stevens who was seeking assistance and relief from the condition on the hillside. He testified that for at least a year prior to the destruction of the residence, after each rain he would place at least fifteen truckloads of creek gravel, crushed stone, “and about anything that they could get hold of” on the road in order to bring the road up to grade so that school buses could get through. He also testified that this was the only maintenance performed, confirming, at least by implication, Mrs. Stevens’ testimony that no attempt was ever made to clean out the ditch line.
The respondent called as an expert witness William E. Bennett, a geologist with nineteen years’ experience. Mr. Bennett testified that he had inspected the property on July 8, 1976, four days prior to the date of the hearing held in this claim and well over four years after the landslide occurred. Based on his inspection of the property, his experience, and his knowledge of geological conditions in West Virginia, Mr. Bennett was of the opinion that the landslide was caused by an unstable condition created by subsurface water percolating or running beneath the slide area, but that the slide was triggered as a result of the removal of the toe of the slope from the slide area. Mr. Bennett testified that he observed the ditch line along the road, and that, in his opinion, it was sufficient to handle the surface water runoff. While his testimony was most persuasive, we cannot ignore the direct testimony of Mrs. Stevens, who testified that on many occasions she saw the. water being cast onto the property because of the improperly maintained ditch. While Mr. Bennett was of the opinion that the slide was triggered by the removal of the toe of the slope, no testimony was introduced as to when this removal occurred, and, if so, *183 by whom. The only testimony relating to bulldozing activities was that of Mrs. Stevens, who indicated that a bulldozer was on her property after the slide and helped move the one remaining room of the house to adjoining property.
We believe that the respondent was under a legal duty to use reasonable care .to maintain the subject ditch line in such condition that it would carry off the surface water and prevent it from being cast upon the Stevens property. See Wotring v. Department of Highways, 9 Ct. Cl. 138 (1972); Olive v. Department of Highways, 8 Ct. Cl. 148 (1970). We believe that the claimant has proved by a preponderance of the evidence that the respondent failed to maintain the ditch line properly and that such failure proximately caused the landslide and the damage to the Stevens property.
In support of her claim for damages, the claimant, without objection, introduced into evidence a written report from S. P. Goodman, a real estate appraiser from Williamson, W.Va. Mr. Goodman, whose report indicated that he had been appraising property for half a century, was of the opinion that the fair market value of the property was $14,285.00. The respondent called as its expert Gary S. Tokarcik, who personally testified to the method he followed in reaching his opinion regarding the fair market value of the property before the landslide and the fair market value of the property after the landslide, which is, of course, the proper method of establishing damage to real estate. His opinion was that the difference in these two values was $8,450.00. We believe that the testimony of Mr. Tokarcik is entitled to much more weight than the written report of Mr. Goodman, and we therefore make an award in favor of the claimant in the amount of $8,450.00.
Award of $8,450.00.