GARDEN, JUDGE:
The claimant is the owner of property, located on the west side of Route 15 north of Marlinton in Pocahontas County, upon which he constructed a home, moving into it on Christmas Day, 1961. The elevation of claimant’s home is about three feet below the elevation of Route 15, which, in this area, is a one-lane asphalt road about ten feet in width, straight, and relatively level. On the east side of Route 15 the ground is fairly level, but the natural drainage is to the west and into a ditch line located on the east side of Route 15. From this ditch line, surface water would flow to a culvert and then through a drainpipe installed beneath Route 15. The lower end of the drainpipe would then discharge the surface water down over a hill south of the claimant’s home.
*405 The claimant testified as to the manner he had consructed his basement and the various drain tiles that he had installed around the footers. The basement of the home had been finished and a bedroom, kitchen, and living room were located there. The home obviously had been properly constructed, for no trouble with surface water had been experienced from 1961 until the spring of 1977 when the claimant noticed dampness on the interior of his front basement wall on the north side of his home. In the spring, following the severe winter of 1977-78, the claimant testified that, in addition to the continuing dampness, a large crack in the cinder blocks had developed along the entire south side of the basement. On Easter Sunday, as a result of a heavy rain, surface water flooded the basement, and the claimant further testified that this condition recurs following every heavy rain.
The claimant and his wife clearly established, through their testimony, that in the fall of 1976 the respondent dumped dirt in the ditch line on the east side of Route 15. The exact number of loads was not specified, but both testified that the volume was sufficient to fill the former ditch line. As a result of this filling, surface water, instead of flowing into the ditch line and then into the culvert and drainpipe, would simply flow across Route 15 onto claimant’s property and then down to and against the home, causing the problems in the basement. Claimant, a retired employee of the respondent, stated that soon after this filling had taken place, he had spoken to one of the respondent’s foremen at the Marlinton headquarters, Cammy Wad.e, and advised him that the filling operation might cause a drainage problem. After the initial flooding, Mr. and Mrs. Friel complained to respondent’s employees, but no attempt was ever made by respondent to reopen the former ditch line.
Claude Blake, a claims investigator for respondent, testified that he visited the area on September 4, 1979, and took various photographs which were introduced into evidence. However, as that was his first and only trip to the area, Mr. Blake was unable to testify as to whether or not a ditch line had previously existed on the east side of Route 15. Mr. Blake did testify that there was a ditch line further south of the area on the east side of Route 15. The photographs vividly reflect that the ditch line had been filled and that grass had been planted and mowed almost to the east edge of the pavement of Route 15, presumably by the owner of the property on the east side of the road. Ray Corbett, a machine *406 operator for respondent, testified that he had participated in pulling this particular ditch line some four years earlier, but he admitted that about a month before the hearing, he had been in the area, and it appeared that someone had dumped dirt in the former ditch line.
The respondent is under a legal duty to use reasonable care to maintain ditch lines in such condition that they will carry off surface water and prevent it from being cast upon the property of others. Stevens v. Dept. of Highways, 12 Ct.Cl. 180 (1978), Taylor v. Dept. of Highways, 12 Ct.Cl. 261 (1979). We believe that satisfactory proof was introduced at the hearing to establish that, not only did respondent fail to properly maintain the ditch line, but it did, in fact, take affirmative action to destroy the ditch line, resulting in damage to claimant’s home. Evidence was presented that it would cost $3,500.00 to make the necessary repairs to claimant’s home, and an award to claimant in that amount is hereby made.
Award of $3,500.00.